GENERAL MOTORS CORPORATION,
Plaintiff,

v.

VILLA MARIN CHEVROLET,
INC., Defendant.

Argonaut Holdings, Inc., Plaintiff,

v.

Villa Marin GMC, Inc., Defendant.

Villa Marin Chevrolet, Inc., and Villa
Marin GMC, Inc., Plaintiffs,

v.

General Motors Corporation,
and Argonaut Holdings,
Inc., Defendants.

Nos. 98–CV–5206 JG, 98–CV–
5208 JG, 98–CV–6167 JG.

United States District Court,
E.D. New York.

July 30, 2002.

See, also, 2000 WL 271965.

Daniel L. Goldberg, New York, NY, Christine A. Button, Bingham McCutchen LLP, New York, NY, Gary A. Adler, Bingham McCutchen LLP, New York, NY, James C. McGrath, Bingham McCutchen LLP, Boston, MA, for Plaintiff.

Steven G. Mintz, Mintz & Gold, New York, NY, Martin G. Margolis, The Margolis Law Firm, P.A., Verona, NJ, for Defendant.

## ORDER

GLEESON, District Judge.

On January 11, 2002, Magistrate Judge Viktor V. Pohorelsky filed a Report and Recommendation ("R & R") recommending that a total of $314,769.20 be awarded to General Motors Corporation ("GM") and Argonaut Holdings, Inc. ("Argonaut") for their attorneys' fees and expenses. Of that amount, Judge Pohorelsky recommended, $252,569.30 is due to Argonaut and $62,199.90 is due to GM.

Villa Marin Chevrolet, Inc., and Villa Marin GMC, Inc. (collectively, "Villa Ma-

rin"), have filed objections to the R & R. One of Villa Marin's objections—that GM is not entitled to fees and costs under the New York Franchised Motor Vehicle Dealer Act, N.Y. Veh. & Traf. Law §§ 460–472 (the "New York Act")—is new. It should have been addressed to Judge Pohorelsky, and Villa Marin's failure to do so constitutes a waiver of the argument. In any event, I find the argument unpersuasive, as (1) it borrows heavily from case law from a fundamentally different setting; and (2) Villa Marin's claims under the New York Act were so plainly lacking in merit that I would have awarded fees and costs to GM as a prevailing defendant even if Villa Marin had made the argument earlier.

The remainder of the objections have no merit. I adopt in its entirety Judge Pohorelsky's thorough and thoughtful R & R.

The parties are directed to confer and to submit a form of judgment by no later than August 7, 2002.

So Ordered.

## REPORT AND RECOMMENDATION

This matter has been referred to me by Judge Gleeson for a report and recommendation concerning the amount of attorney's fees and costs to be awarded to General Motors Corporation ("GM") and Argonaut Holdings, Inc. Following the entry of summary judgment in favor of GM and Argonaut on all of their own claims, as well as on all of the claims and counterclaims made by Villa Marin Chevrolet, Inc. and Villa Marin GMC, Inc. (collectively "Villa Marin") in these consolidated actions, Judge Gleeson determined in a separate Memorandum and Order that both GM and Argonaut were also entitled to an award of attorneys' fees and costs. As to GM, Judge Gleeson rejected Villa Marin's argument that GM was not entitled to any award because of a failure adequately to plead for such an award, holding instead

that GM was entitled to the attorneys' fees and costs incurred in defending against Villa Marin's claims under the New York Franchised Motor Vehicle Dealer Act. Thus, the issues referred to me are limited to a "calculation of the amount of GM's and Argonaut's attorney's fees and costs." Memorandum and Order of August 4, 2000.

## LEGAL PRINCIPLES

### 1. Calculation of Fee Awards Generally

Although GM and Argonaut are both represented by the same counsel, their respective applications for attorneys' fees rest on different grounds. GM bases its application on section 469 of the New York Franchised Motor Vehicle Dealer Act, N.Y. Veh. & Traf. Law §§ 460–472 (McKinney 1996), which provides,

> A franchised motor vehicle dealer who is or may be aggrieved by a violation of this article shall be entitled to sue for, and have, injunctive relief and damages in any court of the state having jurisdiction over the parties. In any such action or proceeding, the court may award necessary costs and disbursements plus a reasonable attorney's fee to any party.

*Id.* § 496. Although there does not appear to be any jurisprudence interpreting the statutory provision above, New York courts typically apply a "lodestar" analysis when setting fees pursuant to a fee-shifting statute. *See Podhorecki v. Lauer's Furniture Stores, Inc.*, 184 A.D.2d 1066, 1066–1067, 585 N.Y.S.2d 268, 269 (4th Dep't 1992). Under that analysis, the court first calculates "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Crescent Publishing Group, Inc. v. Playboy Enterprises, Inc.*, 246 F.3d 142, 146 n. 3 (2d Cir.2001) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). It is the applicant's

burden to present the court with adequate records for making this calculation. *See, e.g., F.H. Krear & Co. v. Nineteen Named Trustees,* 810 F.2d 1250, 1265 (2d Cir. 1987). In determining the hours "reasonably expended" by counsel, the court should exclude hours deemed "excessive, redundant or otherwise unnecessary." *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933. The court then may, in its discretion, make adjustments to the lodestar by applying a multiplier based on less objective factors such as the complexity of the case and the performance of the attorneys. *See Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 47 (2nd Cir.2000).

Argonaut's application for attorneys' fees, on the other hand, rests on a provision of the sublease between Argonaut and Villa Marin GMC (the "Sublease") which provides,

> Attorney's Fees. If either party commences an action to enforce the terms of, or resolve a dispute concerning, this Agreement, the prevailing party in such action shall be entitled to recover all costs and expenses incurred by such party in connection therewith, including reasonable attorneys' fees.

Sublease ¶ 21.18 (the Sublease is appended as Exhibit D to the Affidavit of Dean G. Yuzek). The use of the word "shall" in the above provision from the sublease manifests an agreement between the parties that awards of costs and fees to the prevailing party are mandatory. Under New York law, which governs the Sublease,[1] in cases involving contractual fee-shifting provisions the court typically "will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable." *F.H. Krear & Co. v. Nineteen Named Trustees,* 810 F.2d 1250, 1263 (2nd Cir.1987). As with statutory fee-shifting, the lodestar calculation provides the start-

ing point for analysis of what is reasonable. *Id.*

Regardless of whether fees are awarded pursuant to statute or pursuant to contract, the determination of what is a reasonable award is within the sound discretion of the trial court. *See, e.g., Perez v. New York State Dept. of Labor,* 259 A.D.2d 161, 163–64, 697 N.Y.S.2d 718, 720–21 (3rd Dep't 1999); *Bankers Trust Co. v. Hoovis,* 263 A.D.2d 937, 939, 694 N.Y.S.2d 245, 247 (3rd Dep't 1999); *Orix Credit Alliance, Inc. v. Grace Industries, Inc.,* 261 A.D.2d 521, 522, 690 N.Y.S.2d 651, 652–53 (2nd Dep't 1999); *Crescent Publishing Group, Inc.,* 246 F.3d at 146; *Bronx Auto Mall, Inc. v. American Honda Motor Co., Inc.,* 113 F.3d 329, 330 (2nd Cir.1997). This relaxed standard of review is appropriate because of the trial court's familiarity with the litigation, *Gierlinger v. Gleason,* 160 F.3d 858, 876 (2nd Cir.1998) (citing *In re Bolar Pharmaceutical Co. Securities Litigation,* 966 F.2d 731, 732 (2nd Cir.1992) (per curiam)), and the court may draw on its own familiarity with the case and its experience generally, as well as the evidentiary submissions and arguments of the parties, in making its determination. *See, e.g., Gierlinger,* 160 F.3d at 876; *Luciano v. Olsten Corp.,* 109 F.3d 111, 116 (2d Cir.1997).

2. *Fee Awards When Fee–Shifting is Not Available for all Claims*

The principal difficulty in calculating the proper fees to be awarded in this action stems from the fact that the state statute upon which GM rests its fee request applies only to some of the claims and counterclaims in the litigation. Thus, as to GM, the fees and costs attributable to work that is unrelated to claims and counterclaims made under the New York Franchised Motor Vehicle Dealer Act are not

---

1. See Sublease ¶¶ 22.18, 1.1, and 8.2.

recoverable. Argonaut, however, is entitled to all of its reasonable fees and costs.[2] The difficulty is compounded by the fact that GM and Argonaut are both represented by the same counsel, and the billing records of counsel rarely differentiate between the two entities and often fail to delineate the specific claims or counterclaims for which the various items of services are being rendered.

GM and Argonaut have proposed a formula for allocating the costs of litigation between the two of them and among the claims and counterclaims for which GM is entitled to an award. Thus, of the total amount of fees and disbursements charged to GM and Argonaut by their counsel, *viz.,* $407,688.54, they seek reimbursement for $340,419.93. They reach that figure by assigning two-thirds (67%) of the costs of the litigation to Argonaut, *viz.,* $273,151.32, on the theory that the bulk of the litigation centered on the Sublease, including representations made in negotiating the Sublease and disputes about the condition of the premises. Argonaut seeks to recover the entire amount thus assigned to it. As to the remaining one-third (33%) of the attorneys' fees and disbursements allocable to GM, *viz.,* $134,537.22, GM seeks an award of one-half, or $67,268.61, on the theory that at least half of the time and effort on matters involving GM was attributable to claims and counterclaims under the New York Franchised Motor Vehicle Dealer Act. The net effect of the above allocations is that GM and Argonaut together seek an award equal to the total fees and expenses they actually incurred, less a discount of one-sixth (16.5%) for work done on claims for which there exists no statutory or contractual basis for a fee award.

Villa Marin attacks the application by pointing to the requirement, articulated in the seminal Supreme Court case concerning attorneys' fees, that fee applications should be supported by contemporaneous billing records kept "in a manner that will enable a reviewing court to identify *distinct claims.*" *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941 (emphasis added). Relying on *Hensley,* the Second Circuit has mandated that contemporaneous time records are a prerequisite for fee applications in this Circuit, *see New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1147–48 (2nd Cir.1983), from which the court may calculate the lodestar by determining the nature of the work done, the need for the work, and the amount of time reasonably spent to accomplish the work. *See F.H. Krear & Co. v. Nineteen Named Trustees,* 810 F.2d 1250, 1265 (2nd Cir.1987). Where adequate contemporaneous records are not kept, appropriate reductions should be made.[3] *Id.* at 1265; *Bick v. City of New York,* No. 95 Civ. 8781(KMW)(MHD), 1998 WL 190283, **29–30 (S.D.N.Y. April 21, 1998); *see also Hensley,* 461 U.S. at 433, 103 S.Ct. 1933. In cases where records were deemed inadequate, courts have relied on percentage reductions to arrive at appropriate fee awards. *See, e.g., United States Football League v. National Football League,* 887

---

**2.** There is no limitation as to Argonaut, because all of the claims and counterclaims in which Argonaut is named as a party arise in one way or another out of the Sublease, which provides for plenary recovery of attorneys' fees by the prevailing party with respect to litigation arising out of the Sublease.

**3.** Because *New York Ass'n for Retarded Children* involved claims for attorneys' fees arising under federal statutes, at least one court has held that the contemporaneous billing record requirement does not apply in diversity cases where state law provides the rules of decision. *See Banca Della Svizzera Italiana v. Cohen,* 756 F.Supp. 805, 808–09 (S.D.N.Y. 1991). It appears, however, that New York law does apply the same rule, although perhaps not expressly. *See F.H. Krear & Co.,* 810 F.2d at 1265 (citing state court decisions).

F.2d 408, 415 (2nd Cir.1989); *Fernandez v. North Shore Orthopedic Surgery & Sports Medicine, P.C.*, No. 96 CV 4489, 2000 WL 130637 at *3 (E.D.N.Y. Feb. 4, 2000); *see also Marisol A. ex rel. Forbes v. Giuliani*, 111 F.Supp.2d 381, 389–90 (S.D.N.Y.2000).

In *Hensley*, as well as some of the other cases cited above, the courts encountered situations where a party entitled to recover fees and costs prevailed on some but not all of its claims in the case. Where the claims upon which a party has succeeded are distinct from those upon which it has failed, the time spent on the unsuccessful claims is to be excluded from calculating the lodestar. *See Hensley*, 461 U.S. at 434–35, 103 S.Ct. 1933. On the other hand, the Supreme Court in *Hensley* recognized that claims and contentions in lawsuits are often interrelated because they are based on a common core of facts or are based on related legal theories, *see id.*, and that in such situations fees should be awarded for all work done on such interrelated claims, even if a party was not successful on some of the claims. *See id.* at 435–37, 103 S.Ct. 1933. What was crucial to the Court in *Hensley* was to determine a *reasonable* fee based on the overall success of the prevailing party on issues relating to claims for which a fee award may be made, *see id.* at 434–37, 103 S.Ct. 1933, and without resort to a formula for apportioning the award on the basis of a mathematical comparison of the total number of issues in the case with the issues upon which the prevailing party was successful. *See id.* at 435, 439, 103 S.Ct. 1933 ("Given the interrelated nature of the facts and legal theories in this case, the District Court did not err in refusing to apportion the fee award mechanically on the basis of respondents' success or failure on particular issues."). The same principle should apply in a case such as the one before this court: all work done on interrelated claims and contentions should be compensated at reasonable hourly rates even though some of those claims and contentions would not provide a basis for fee shifting if they stood alone.

## ANALYSIS

·Given the above principles, the court's task here starts with a review of the billing records submitted by counsel to determine first, whether any of the time should be excluded from calculating the lodestar because it relates to excessive, redundant or unnecessary work.[4] The court must also consider whether the rates charged for various work are reasonable in light of the tasks undertaken and the experience of the attorneys and paralegals who performed them. Finally, the court will consider whether the records support the percentage allocations, proposed by GM and Argonaut, as between work for which a fee award may be made and work for which it may not. In conducting that analysis, the court will review the record as a whole, including the pleadings and the court's previous decisions, to determine whether the work done by counsel concerns matters relating to claims for which there exists either a statutory or contractual entitlement to a fee award.

Upon reviewing the billing records submitted by counsel, the court finds that they are adequately detailed to permit the court to make determinations about the nature of the work performed, and whether the time spent was unnecessary, redundant or excessive. They reflect that the litigation was staffed typically with a partner, a senior associate, a·junior associate and a paralegal, although on occasion an additional associate or paralegal would be called upon for specific tasks. Given the level of complexity of this litigation, which involved multiple complaints and parties, as well as multiple claims and counter-

---

4. The billing records are attached as Exhibit G to the Affidavit of James C. McGrath.

claims in various areas of law including real estate, contract and franchising, this staffing arrangement was appropriate. The records also reflect that the division of responsibilities among the attorneys was appropriate. Thus, the partner's involvement was relatively limited when compared with that of the associates, and focused primarily on the overall direction of the litigation. The tasks performed by the senior associate and the junior associates were generally consistent with their relative levels of experience.

■ Villa Marin complains that a number of entries are vague, such as "attention to status" or "internal conference regarding status and strategy." These entries, however, are invariably for very short periods of time—generally two-tenths of an hour—and generally relate either to conversations with other attorneys or with the clients about the litigation, or to thinking about the direction of the litigation. Such time is compensable, provided it is not excessive. If the entries with such descriptions were for lengthy periods of time, they might well be considered vague without a more specific description of what was discussed. As the time periods for which such descriptions are offered are not lengthy, however, and as the entries with such descriptions are not overly numerous, the court is satisfied after review of all the records that the time devoted to status and strategy is not excessive.

■ The court also finds that the hourly rates charged for attorneys' time were appropriate. The partner's time was charged at rates between $315 and $375

per hour, and the senior associate's time was charged at rates between $225 and $295 per hour.[5] The affidavit detailing the experience and expertise of those two attorneys substantiates their entitlement to compensation at those rates. See Aff't of Daniel J. Goldberg. The time of the other, more junior associates who worked on the case was charged at rates between $140 and $225 per hour. Although no affidavit was submitted to detail the experience and expertise of those attorneys, the court finds that those rates are within acceptable limits for attorneys with one to five years of experience. Moreover, all of the attorneys' rates were discounted from the standard billing rates charged by the firm for those attorneys' services. The rates are entirely consistent with rates charged in this area for counsel with similar experience and expertise. See generally Marisol A. ex rel. Forbes, 111 F.Supp.2d at 386–87.

■ As to the hourly rates charged for the paralegals, however, the court finds inadequate justification in the record to charge Villa Marin for the full amounts requested. The paralegals' time was charged at rates between $75 and $130 per hour, depending on the paralegal, with the bulk of the charges incurred at the rate of $115 or $120 per hour. No information was submitted, however, concerning the levels of experience or expertise of any of the paralegals, and no information was submitted concerning the rates customarily charged for paralegals in this area. In the absence of such information the court has deducted $2,152.50 from the fee award sought.[6] Compare Marisol A. ex rel. Forbes, 111 F.Supp.2d at 389 & n. 5.

---

5. Counsel's hourly rates increased annually over the course of the litigation from 1998 to 2000.

6. That figure constitutes a one-third reduction of the total fees charged for paralegal services (which the court calculated by adding together all of the fees charged for E. Tarshis, D. Flynn, T. Curran, H. Bragdon, S. Jacobs, F.

Lyle, T. Specht, R. Stolle, and N. Fiddiman)— $6,457.50. Since the vast majority of time for paralegal services was billed at $115 or $120 per hour, a one-third reduction brings the effective overall rate to approximately $75 per hour, an amount consistent with that found reasonable in other recent cases. See, e.g.,

██ Although the hours and rates relating to the fees charged for attorneys were reasonable, some of the attorneys' time should nevertheless be excluded from the calculation of the lodestar. The senior associate assigned to the matter worked in counsel's Boston office, while the bulk of the work requiring in-person attendance by counsel occurred in the New York area. As a result, substantial travel time was charged to GM and Argonaut when the senior associate traveled to New York. Villa Marin should not be required to foot that expense simply because GM and Argonaut chose to have a Boston, rather than a New York, lawyer handle those matters. (Indeed, GM and Argonaut's counsel has a New York office presumably staffed with attorneys competent to handle such matters.) Accordingly, a reduction of $8,480 is made below in the fee award to exclude such time from compensation.[7] In addition, the court agrees with Villa Marin that time spent by counsel in formulating budgets for the litigation is not properly compensable. Accordingly a reduction of $940.50 is made below to exclude compensation for that time.

██ Similarly, not all expenses should be compensated. The totals for the entries for various items of travel come to rather substantial numbers. None have been explained, and as noted above, the costs for travel from Boston to New York by the senior associate are not properly compensable. Nor are expenses for travel to and from the office, expenses which it is not unusual for larger firms to bill to clients. Although the court does not doubt that at least some of the travel expenses relate to travel for which compensation is appropriate, since it is the applicant's burden to establish the reasonableness of expenses for which it seeks recovery, *see, e.g., F.H. Krear & Co.,* 810 F.2d at 1265, the failure to itemize the reasons for the substantial travel expenditures must be held against the applicant. Accordingly, the items denominated "Airline Tickets," "Travel," "General Travel," and "Coach Services" are eliminated from the court's calculation of the fee award. Those items total $19,146.44.

██ On the other hand, the court rejects Villa Marin's argument that computerized research fees are not compensable. Villa Marin incorrectly cites *Tri–Star Pictures, Inc. v. Unger,* 42 F.Supp.2d 296, 306 (S.D.N.Y.1999) for the proposition that the Second Circuit forbids reimbursement for such items. In fact, *Tri–Star Pictures,* and the case it cites, *U.S. ex rel. Evergreen Pipeline Const. Co., Inc. v. Merritt Meridian Const. Corp.,* 95 F.3d 153, 173 (2nd Cir.1996), simply denied recovery for such items only insofar as they were sought as costs under Rule 54(d)(1) of the Federal Rules of Civil Procedure. In *Evergreen Pipeline,* the Second Circuit adopted the Seventh Circuit's conclusion that computerized research is compensable under an application for attorneys' fees, but not as a separate item of taxable costs. *See* 95 F.3d at 173 (citing *Haroco, Inc. v. American Nat. Bank and Trust Co. of Chicago,*

---

*Marisol A. ex rel. Forbes,* 111 F.Supp.2d at 389 & n. 5.

**7.** The records reflect that the senior associate traveled to the New York area on eight occasions. All of that travel took place in 1999 when the senior associate's time was charged at $265 per hour. As the records do not specify how much time was actually spent in travel, the court assumes that four hours of time on each of those days was spent in round-trip travel by the senior associate on each of those days. On that assumption, a total of $8480 was charged for the time spent by the senior associate in travel to the New York area. No deduction is appropriate for travel by the senior associate to other locales as those travel expenses are unlikely to have been appreciably different if the travel had originated in New York instead of Boston.

38 F.3d 1429, 1440–41 (7th Cir.1994)) (because added cost of computerized research is offset by reduction in amount of attorneys' time spent on research, both computer fee and attorneys' time are compensable as attorneys' fees).

■ Turning to the allocation of fees and expenses between GM and Argonaut and among the various claims and counterclaims in this action, the court is persuaded that the percentage reduction proposed by GM and Argonaut is supported by the record and yields a reasonable fee award. From an examination of the pleadings, the dockets, and the decision of Judge Gleeson dated March 7, 2000, it is clear that the entire litigation emanated from a common core of facts: the negotiations leading to a group of contemporaneous, interrelated agreements among the parties, of which the sublease between Argonaut and Villa Marin was an integral part, and the ensuing events concerning performance of those agreements. At the center of the dispute were the various contentions surrounding the suitability of the premises covered by the sublease whether the alleged unsuitability provided Villa Marin with a basis for not performing its obligations under the interrelated agreements. Moreover, virtually all of the claims and factual contentions urged by Villa Marin, certainly all of the issues seriously in dispute, are related either to the sublease and the negotiations that led to it or to alleged violations of the New York Franchised Motor Vehicle Act. Compare Villa Marin Answer and Counterclaims, No. 98 CV 5206 and Villa Marin Answer and Counterclaims, No. 98 CV 5208, with Villa Marin First Amended Complaint, No. 98 CV 6167. Thus, for example, the factual contentions underlying GM's claims for enforcement of the Termination Agreement in No. 98 CV 5206, for which there is no basis for a fee award, are nevertheless inextricably interrelated with the factual contentions underlying the remaining claims and counterclaims for which there does exist either a statutory or contractual basis for a fee award. Accordingly, a good argument can be made that *all* of the reasonable fees and expenses charged to both GM and Argonaut are potentially recoverable by both of them because all of the claims in all of the actions, whether they involve GM or Argonaut or both, are interrelated with each other and with claims for which there is either a statutory or contractual basis for a fee award.

Given the interrelationship of the claims, counsel for GM and Argonaut should not be faulted, nor their clients penalized, for failing to specifically delineate in the billing records the specific claim or claims for which specific work was done or for failing to identify the specific client for which specific work was done. *See Hensley*, 461 U.S. at 435, 103 S.Ct. 1933 ("Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis."). GM's and Argonaut's proposal to reduce the fees and expenses actually incurred by one-sixth, which the court adopts, eliminates any possibility that the fees and expenses awarded are not related to claims for which fees may be awarded by statute or by contract.

The court's conviction that this approach yields a fair and reasonable fee award is further strengthened by the fact that substantial economies of effort were undoubtedly realized because of the decision that GM and Argonaut be jointly represented by the same counsel. Had the choice been made to retain separate counsel for each of them, the court is convinced that substantial duplication of effort would have occurred as two sets of attorneys examined the same set of interrelated facts and legal issues involved in the litigation, and that the fee award would have been correspondingly larger than that awarded here.

Although a decision on the proper assignment, as between Argonaut and GM, of the amount of fees actually incurred by each is not necessary to the calculation of the overall fee award, the court nevertheless finds that the assignment proposed—two-thirds to Argonaut and one-third to GM—is reasonable. The dominance of the disputes concerning the Sublease in relation to the entire litigation justifies an allocation of a majority of the fees and expenses to Argonaut. The court recognizes, of course, that the precise percentages of such an assignment cannot reasonably be determined, and that other percentages could also be justified.

## CONCLUSION

Based on the above considerations, the court recommends that a total of $314,769.20 be awarded to GM and Argonaut for their attorneys' fees and expenses in this litigation.[8] Of that amount, using the percentage assignments proposed by the applicants, $252,569.30 is assigned to Argonaut and $62,199.90 is assigned to GM.[9]

\*    \*    \*    \*    \*    \*

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 10 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); see, e.g., Thomas v. Arn, 474 U.S. 140, 155,

106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985); IUE AFL–CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir.1993); Frank v. Johnson, 968 F.2d 298 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); Small v. Secretary of Health and Human Serv., 892 F.2d 15, 16 (2d Cir.1989) (per curiam).

Jan. 11, 2002.

---

8. The court calculates that figure by taking the total amount of fees and expenses actually incurred by the applicants, as substantiated by the billing records they submitted—$407,688.54; subtracting from that figure the amounts deemed non-compensable above—$2,152.50 (for unsubstantiated paralegal rates), $8,480 (for senior associate's travel time), $940.50 (for budget calculation time), and $19,146.44 (for unsubstantiated travel expenses); and further reducing the amount by 16.5%.

9. Argonaut's portion is calculated by taking 67% of the compensable expenses (i.e., actual expenses less the amounts subtracted as itemized in footnote but before the 16.5% reduction), and GM's portion is the remainder of the total award.